ORIGINAL

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
JUN - 5 2017
RECEIVED

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED JUN - 5 2017
CLERK

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLEAN AIR COUNCIL, EARTHWORKS, ENVIRONMENTAL DEFENSE FUND, ENVIRONMENTAL INTEGRITY PROJECT, NATURAL RESOURCES DEFENSE COUNCIL, and SIERRA CLUB,

*Petitioners*

v.

SCOTT PRUITT, Administrator, ENVIRONMENTAL PROTECTION AGENCY, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

No. 17-1145

## PETITION FOR REVIEW

Pursuant to Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1), Rule 15 of the Federal Rule of Appellate Procedure, and Circuit Rule 15, Clean Air Council, Earthworks, Environmental Defense Fund, Environmental Integrity Project, Natural Resources Defense Council, and Sierra Club hereby petition the Court for review of the final action of Respondents Scott Pruitt, Administrator, U.S.

Environmental Protection Agency, and U.S. Environmental Protection Agency to administratively stay standards of performance for the oil and gas sector as published in the Federal Register at 82 Fed. Reg. 25,730 (June 5, 2017) and titled "Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources; Grant of Reconsideration and Partial Stay." (Attach. 1).

DATED: June 5, 2017

Respectfully submitted,

/s/ *Susannah L. Weaver*
SUSANNAH L. WEAVER
SEAN H. DONAHUE
Donahue & Goldberg, LLP
1111 14th St., NW, Ste. 510A
Washington, DC 20005
Telephone: (202) 569-3818
Facsimile: (202) 289-8009
susannah@donahuegoldberg.com
*Counsel for Petitioner Environmental Defense Fund*

PETER ZALZAL
ALICE HENDERSON
VICKIE PATTON
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
Telephone: (303) 447-7214
pzalzal@edf.org
TOMÁS CARBONELL
Environmental Defense Fund
1875 Connecticut Ave., 6th Floor
Washington, D.C., 20009
Telephone: (202) 572-3610
tcarbonell@edf.org
*Counsel for Petitioner Environmental Defense Fund*

DAVID D. DONIGER
Natural Resources Defense Council
1152 15th Street NW, Ste. 300
Washington, DC 20005
Telephone: (202)-289-6868
ddoniger@nrdc.org
MELEAH GEERTSMA
Natural Resources Defense Council
2 N. Wacker Dr., Ste. 1600
Chicago, IL 60606
Telephone: (312) 651-7904
mgeertsma@nrdc.org
*Counsel for Petitioner Natural Resources Defense Council*

JOANNE MARIE SPALDING
Sierra Club
2101 Webster St., Ste. 1300
Oakland, CA 94612
Telephone: (415) 997-5725
Joanne.Spalding@sierraclub.org
ANDRES RESTREPO
Sierra Club
50 F St., NW, Eighth Floor
Washington, DC 20001
Telephone: (202) 650-6073
Andres.Restrepo@sierraclub.org
*Counsel for Petitioner Sierra Club*

ANN BREWSTER WEEKS
DARIN SCHROEDER
Clean Air Task Force
18 Tremont, Ste. 530
Boston, MA 02108
Telephone: (617) 624-0234
aweeks@catf.us
dschroeder@catf.us
*Counsel for Petitioner Earthworks*

ADAM KRON
Environmental Integrity Project
1000 Vermont Ave. NW, Ste. 1100
Washington, DC 20005
Telephone: (202) 263-4451
akron@environmentalintegrity.org
*Counsel for Petitioner Environmental Integrity Project*

TIM BALLO
Earthjustice
1625 Massachusetts Ave., NW,
Ste. 702
Washington, DC 20036
Telephone: (202) 667-4500
tballo@earthjustice.org
JOEL MINOR
Earthjustice
633 17th St., Ste. 1600
Denver, CO 80202
Telephone: (303) 996-9628
jminor@earthjustice.org
*Counsel for Petitioners Sierra Club and Clean Air Council*

# Attachment 1

## Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources; Grant of Reconsideration and Partial Stay,

## 82 Fed. Reg. 25,730 (June 5, 2017)

Paperwork Reduction Act of 1995 (44 U.S.C. 3501–3520).

*D. Federalism and Indian Tribal Governments*

A rule has implications for Federalism under Executive Order 13132 if it has a substantial direct effect on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. We have analyzed this rule under that Order and have determined that it is consistent with the fundamental federalism principles and preemption requirements described in Executive Order 13132.

Also, this rule does not have tribal implications under Executive Order 13175, Consultation and Coordination with Indian Tribal Governments, because it would not have a substantial direct effect on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes. If you believe this rule has implications for Federalism or Indian tribes, please contact the person listed in the **FOR FURTHER INFORMATION CONTACT** section.

*E. Unfunded Mandates Reform Act*

The Unfunded Mandates Reform Act of 1995 (2 U.S.C. 1531–1538) requires Federal agencies to assess the effects of their discretionary regulatory actions. In particular, the Act addresses actions that may result in the expenditure by a State, local, or tribal government, in the aggregate, or by the private sector of $100,000,000 (adjusted for inflation) or more in any one year. Though this rule would not result in such an expenditure, we do discuss the effects of this rule elsewhere in this preamble.

*F. Environment*

We have analyzed this rule under Department of Homeland Security Management Directive 023–01 and Commandant Instruction M16475.lD, which guide the Coast Guard in complying with the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4370f), and have made a preliminary determination that this action is one of a category of actions that do not individually or cumulatively have a significant effect on the human environment. This rule involves the establishment of a permanent safety zone on the navigable waters of Port Valdez, in the vicinity of the Valdez Spit. It is categorically excluded from further review in accordance with paragraph 34(g) of Figure 2–1 of Commandant Instruction M16475.lD. A Record of Environmental Consideration (REC) supporting this determination is available in the docket where indicated in the **ADDRESSES** section of this preamble.

*G. Protest Activities*

The Coast Guard respects the First Amendment rights of protesters. Protesters are asked to contact the person listed in the **FOR FURTHER INFORMATION CONTACT** section to coordinate protest activities so that your message can be received without jeopardizing the safety or security of people, places, or vessels.

**List of Subjects in 33 CFR Part 165**

Harbors, Marine safety, Navigation (water), Reporting and recordkeeping requirements, Security measures, Waterways.

For the reasons discussed in the preamble, the Coast Guard amends 33 CFR part 165 as follows:

## PART 165—REGULATED NAVIGATION AREAS AND LIMITED ACCESS AREAS

■ 1. The authority citation for part 165 continues to read as follows:

**Authority:** 33 U.S.C 1231; 50 U.S.C. 191; 33 CFR 1.05–1, 6.04–1, 6.04–6, and 160.5; Department of Homeland Security Delegation No. 0170.1.

■ 2. Add § 165.1713 to read as follows:

**§ 165.1713 Safety Zone; City of Valdez July 4th Fireworks, Port Valdez; Valdez, AK.**

(a) *Regulated area.* The following area is a permanent safety zone: All navigable waters of Port Valdez within a 200-yard radius from a position of 61°07′22″ N. and 146°21′13″ W. This includes the entrance to the Valdez small boat harbor.

(b) *Effective date.* This rule will be effective from 9:30 p.m. until 11:30 p.m. on July 4th of each year, or during the same time frame on specified rain dates of July 5th through July 8th of each year.

(c) *Definitions.* The following definitions apply to this section:

(1) The term "designated representative" means any Coast Guard commissioned, warrant or petty officer of the U. S. Coast Guard who has been designated by the COTP, Prince William Sound, to act on his or her behalf.

(2) The term "official patrol vessel" may consist of any Coast Guard, Coast Guard Auxiliary, state, or local law enforcement vessels assigned or approved by the COTP, Prince William Sound.

(d) *Regulations.* (1) The general regulations contained in 33 CFR 165.23, as well as the following regulations, apply.

(2) The safety zone is closed to all vessel traffic, except as may be permitted by the COTP or the designated representative during periods of enforcement.

(3) All persons and vessels shall comply with the instructions of the COTP or the designated representative. Upon being hailed by a U.S. Coast Guard vessel or other official patrol vessel by siren, radio, flashing light or other means, the operator of the vessel shall proceed as directed.

(4) Vessel operators desiring to enter or operate within the regulated area may request permission from the COTP via VHF Channel 16 or (907) 835–7205 (Prince William Sound Vessel Traffic Center) to request permission to do so.

(5) The Coast Guard will issue a Broadcast Notice to Mariners to advise mariners of the safety zone before and during the event.

(6) The COTP may be aided by other Federal, state, borough and local law enforcement officials in the enforcement of this regulation.

Dated: May 16, 2017.

**J.T. Lally,**

*Commander, U.S. Coast Guard, Captain of the Port, Prince William Sound, Alaska.*

[FR Doc. 2017–11572 Filed 6–2–17; 8:45 am]

BILLING CODE 9110–04–P

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 60**

**[EPA–HQ–OAR–2010–0505; FRL–9963–40–OAR]**

**RIN 2060–AT63**

## Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources; Grant of Reconsideration and Partial Stay

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of reconsideration and partial stay.

**SUMMARY:** By a letter dated April 18, 2017, the Administrator announced the convening of a proceeding for reconsideration of the fugitive emission requirements at well sites and compressor station sites in the final rule, "Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources," published in the **Federal Register** on June 3, 2016. In this action, the Environmental Protection Agency (EPA) is granting reconsideration of additional

requirements in that rule, specifically the well site pneumatic pumps standards and the requirements for certification by professional engineer. In addition, the EPA is staying for three months these rule requirements pending reconsideration.

**DATES:** This final rule is effective June 2, 2017. The action granting reconsideration is effective June 2, 2017. The stay of §§ 60.5393a(b) through (c), 60.5397a, 60.5410a(e)(2) through (5) and (j), 60.5411a(d), 60.5415a(h), 60.5420a(b)(7), (8), and (12), and (c)(15) through (17) is effective from June 2, 2017, until August 31, 2017.

**FOR FURTHER INFORMATION CONTACT:** Mr. Peter Tsirigotis, Sector Policies and Programs Division (D205–01), Office of Air Quality Planning and Standards, Environmental Protection Agency, Research Triangle Park, North Carolina 27711; telephone number: (888) 627–7764; email address: *airaction@epa.gov.*

Electronic copies of this document are available on EPA's Web site at *https://www.epa.gov/controlling-air-pollution-oil-and-natural-gas-industry.* Copies of this document are also available at *https://www.regulations.gov,* at Docket ID No. EPA–HQ–OAR–2010–0505.

**SUPPLEMENTARY INFORMATION:**

## I. Background

On June 3, 2016, the EPA published a final rule titled "Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources; Final Rule," 81 FR 35824 (June 3, 2016) ("2016 Rule"). The 2016 Rule establishes new source performance standards (NSPS) for greenhouse gas emissions and volatile organic compound (VOC) emissions from the oil and natural gas sector. This rule addresses, among other things, fugitive emissions at well sites and compressor station sites ("fugitive emissions requirements"), and emissions from pneumatic pumps. In addition, for a number of affected facilities (*i.e.,* centrifugal compressors, reciprocating compressors, pneumatic pumps, and storage vessels), the rule requires certification by a professional engineer of the closed vent system design and capacity, as well as any technical infeasibility determination relative to controlling pneumatic pumps at well sites. For further information on the 2016 Rule, see 81 FR 35824 (June 3, 2016).

On August 2, 2016, a number of interested parties submitted administrative petitions to the EPA seeking reconsideration of various aspects of the 2016 Rule pursuant to section 307(d)(7)(B) of the Clean Air Act (CAA) (42 U.S.C. 7607(d)(7)(B)).[1] Those petitions include numerous objections relative to the fugitive emissions requirements, well site pneumatic pump standards, and the requirements for certification by professional engineer. Under section 307(d)(7)(B) of the CAA, the Administrator shall convene a reconsideration proceeding if, in the Administrator's judgment, the petitioner raises an objection to a rule that was impracticable to raise during the comment period or if the grounds for the objection arose after the comment period but within the period for judicial review. In either case, the Administrator must also conclude that the objection is of central relevance to the outcome of the rule. The Administrator may stay the effectiveness of the rule for up to three months during such reconsideration.

In a letter dated April 18, 2017, based on the criteria in CAA section 307(d)(7)(B), the Administrator convened a proceeding for reconsideration of the following objections relative to the fugitive emissions requirements: (1) The applicability of the fugitive emissions requirements to low production well sites, and (2) the process and criteria for requesting and receiving approval for the use of an alternative means of emission limitations (AMEL) for purposes of compliance with the fugitive emissions requirements in the 2016 Rule.

The EPA had proposed to exempt low production well sites from the fugitive emissions requirements, believing the lower production associated with these wells would generally result in lower fugitive emissions. 80 FR 56639. However, the final rule differs significantly from what was proposed in that it requires these well sites to comply with the fugitive emissions requirements based on information and rationale not presented for public comment during the proposal stage. See 81 FR 35856 (". . . well site fugitive emissions are not correlated with levels of production, but rather based on the number of pieces of equipment and components"). It was therefore impracticable to object to this new rationale during the public comment period.

The AMEL process and criteria were included in the 2016 Rule without having been proposed for notice and comment. The EPA added the AMEL provisions in the final rule with the intent of, among other goals, reducing compliance burdens for those sources that may already be reducing fugitive emissions in accordance with a state requirement or other program that is achieving reductions equivalent to those required by the 2016 Rule. These AMEL provisions were also added to encourage the development and use of innovative technology, in particular for fugitive emissions monitoring. 81 FR 35861. However, issues and questions raised in the administrative petitions for reconsideration (*e.g.,* who can apply for and who can use an approved AMEL) suggest that sources may have difficulty understanding and applying for AMEL.

Both issues described above, which relate directly to whether certain sources must implement the fugitive emissions requirements, are of central relevance to the outcome of the 2016 Rule for the reasons stated below. Fugitive emissions are a significant source of emissions for many industries, and the EPA has promulgated numerous NSPS specifically for reducing fugitive emissions, including 40 CFR part 60, subpart KKK (addressing VOC leaks from on-shore natural gas processing plants), as standalone rules. The fact that the EPA chose here to promulgate the well site and compressor station fugitive emissions requirements along with other standards in the 2016 Rule does not make these requirements any less important than the other fugitive emissions standards; rather, because of their importance, they are a significant component of the 2016 Rule. The issues described above are important as they determine the universe of affected facilities that must implement the fugitive emission requirements; as such, they are of central relevance to the outcome of the 2016 Rule. As stated in the April 18, 2017, letter, the EPA has convened an administrative proceeding for the reconsideration of the fugitive emissions requirements in response to these two objections.

## II. Grant of Reconsideration of Additional Issues

Since issuing the April 18, 2017, letter, the EPA has identified objections to two other aspects of the 2016 Rule that meet the criteria for reconsideration under section 307(d)(7)(B) of the CAA. These objections relate to (1) the requirements for certification of closed vent system by professional engineer, and (2) the well site pneumatic pump standards.

### *A. Requirements for Certification of Closed Vent System by Professional Engineer*

For closed vent systems used to comply with the emission standards for

[1] Copies of these petitions are included in the docket for the 2016 Rule, Docket ID No. EPA–HQ–OAR–2010–0505.

various equipment used in the oil and natural gas sector, the 2016 Rule requires certification by a professional engineer (PE) that a closed vent system design and capacity assessment was conducted under his or her direction or supervision and that the assessment and resulting report were conducted pursuant to the requirements of the 2016 Rule ("PE certification requirement"). Several petitioners for administrative reconsideration assert that the PE certification requirement was not proposed for notice and comment.[2] One petitioner notes that no costs associated with obtaining such certification were considered or provided for review during the proposal process.[3] The petitioner claims that there is no quantifiable benefit to the environment from this additional compliance demonstration requirement, while there is significant expense involved.[4]

Section 111 of the CAA requires that the EPA consider, among other factors, the cost associated with establishing a new source performance standard. See 111(a)(1) of the CAA. The statute is thus clear that cost is an important consideration in determining whether to impose a requirement. In finalizing the 2016 Rule, the EPA made clear that it viewed the PE certification requirement to be an important aspect of a number of performance standards in the that rule. The EPA acknowledges that it had not analyzed the costs associated with the PE certification requirement; therefore, it was impracticable for petitioners to provide meaningful comments during the comment period on whether the improved environmental performance this requirement may achieve justifies the associated costs and other compliance burden. This issue is of central relevance to the outcome of the 2016 Rule because the rule requires this PE certification for demonstrating compliance for a number of different standards, including the standards for centrifugal compressors, reciprocating compressors, pneumatic pumps, and storage vessels. For the reasons stated above, the EPA is granting reconsideration of the PE certification requirement.

*B. Technical Infeasibility Determination (Well Site Pneumatic Pump Standards)*

In the 2016 Rule, the EPA exempts a pneumatic pump at a well site from the emission reduction requirement if it is technically infeasible to route the pneumatic pump to a control device or a process. 81 FR 35850. However, the rule requires that such technical infeasibility be determined and certified by a "qualified professional engineer" as that term is defined in the final rule. During the proposal stage, the EPA did not propose or otherwise suggest exempting well site pneumatic pumps from emission control based on such certification. In fact, the technical infeasibility exemption itself was added during the final rule stage. Further, this certification requirement differs significantly from how the EPA has previously addressed another "technical infeasibility" issue encountered by this industry. Specifically, the oil and gas NSPS subpart OOOO, which was promulgated in 2012, exempts hydraulically fractured gas well completions from performing a reduced emission completion (REC) if it is not technically feasible to do so, and requires documentation and recordkeeping of the technical infeasibility. See 40 CFR 60.5375. The 2016 Rule extends the REC requirement and associated technical infeasibility exemption to hydraulically fractured oil well completions and requires more detailed documentation of technical infeasibility. Neither subpart OOOO nor the 2016 Rule require that REC technical infeasibility be certified by a qualified professional engineer, nor was such requirement proposed or otherwise raised during the public comment period for these rules. In light of the fact that the EPA had not proposed such certification requirement for pneumatic pumps, and how this requirement differs from the EPA's previous treatment of a similar issue as described above, one could not have anticipated that the 2016 Rule would finalize such certification requirement for pneumatic pumps in the 2016 Rule. Further, believing that "circumstances that could otherwise make control of a pneumatic pump technically infeasible at an existing location can be addressed in the site's design and construction," the EPA does not allow such exemption for new developments in the 2016 Rule. 40 CFR 60.5393a(b)(5); see also, 81 FR 35849. The 2016 Rule refers to such new developments as "greenfield," which is defined as an "entirely new construction." 40 CFR 60.5430a.

The provisions described above were included in the 2016 Rule without having been proposed for notice and comment, and numerous related objections and issues were raised in the reconsideration petitions. With respect to the requirement that technical infeasibility be certified by a professional engineer, petitioners raised the same issues as those for closed vent system certification discussed in section II.A. In addition, several petitions find the definition of greenfield unclear. For example, one petitioner questions whether the term "new" as used in this definition is synonymous to how that term is defined in section 111 of the CAA. Additional questions include whether a greenfield remains forever a greenfield, considering that site designs may change by the time that a new control or pump is installed (which may be years later). Petitioners also object to EPA's assumption that the technical infeasibility encountered at existing well sites can be addressed when "new" sites are developed. The issues described above dictate whether one must achieve the emission reduction required under the well site pneumatic pump standards, which were a major addition to the existing oil and gas NSPS regulations through promulgation of the 2016 Rule. Therefore, these issues are of central relevance to the outcome of the 2016 Rule.

As announced in the April 18, 2017, letter, and as further announced in this document, the Administrator has convened an administrative reconsideration proceeding. As part of the proceeding, the EPA will prepare a notice of proposed rulemaking that will provide the petitioners and the public an opportunity to comment on the rule requirements and associated issues identified above, as well as those for which reconsideration was granted in the April 18, 2017, letter. During the reconsideration proceeding, the EPA intends to look broadly at the entire 2016 Rule. For a copy of this letter and the administrative reconsideration petitions, please see Docket ID No. EPA–HQ–OAR–2010–0505.

## III. Stay of Certain Provisions

By this document, in addition to the grant of reconsideration discussed in section II above, the EPA is staying the effectiveness of certain aspects of the 2016 Rule for three months pursuant to section 307(d)(7)(B) of the CAA pending reconsideration of the requirements and associated issues described above and in the April 18, 2017, letter. Specifically, the EPA is staying the effectiveness of the fugitive emissions requirements, the standards for pneumatic pumps at well sites, and the certification by a professional engineer requirements. As explained above, the low production well sites and AMEL issues under reconsideration determine the universe of sources that must implement the fugitive emissions requirements. The

[2] See Docket ID No. EPA–HQ–OAR–2010–0505–7682 and Docket ID No. EPA–HQ–OAR–2010–0505–7686.

[3] See Docket ID No. EPA–HQ–OAR–2010–0505–7682.

[4] Id.

2016 Rule requires compliance with the closed vent system requirements, including certification by a professional engineer, in order to meet the emissions standards for a wide range of equipment (centrifugal compressors, reciprocating compressors, pneumatic pumps, and storage vessels); therefore, the issues relative to closed vent certification affect the ability of these equipment to comply with the 2016 Rule. The technical infeasibility exemption and the associated certification by professional engineer requirement, as well as the "greenfield" issues described above, dictate whether a source must comply with the emission reduction requirement for well site pneumatic pumps. In light of the uncertainties these issues generate regarding the application and/or implementation of the fugitive emissions requirements, the well site pneumatic pumps standards and the certification by professional engineers requirements, the EPA believes it is reasonable to stay the effectiveness of these requirements in the 2016 Rule, pending reconsideration. Therefore, pursuant to section 307(d)(7)(B) of the CAA, the EPA hereby stays the effectiveness of these requirements for three months.

This stay will remain in place until August 31, 2017.

**List of Subjects in 40 CFR Part 60**

Environmental protection, Administrative practice and procedure, Air pollution control, Reporting and recordkeeping.

Dated: May 26, 2017.

**E. Scott Pruitt,**

*Administrator.*

■ For the reasons cited in the preamble, title 40, chapter I of the Code of Federal Regulations is amended as follows:

## PART 60—STANDARDS OF PERFORMANCE FOR NEW STATIONARY SOURCES

■ 1. The authority citation for part 60 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

## Subpart OOOOa—[Amended]

■ 2. Section 60.5393a is amended by:
■ a. Staying paragraphs (b) and (c) from June 2, 2017, until August 31, 2017; and
■ b. Adding paragraph (f).

The addition reads as follows:

**§ 60.5393a What GHG and VOC standards apply to pneumatic pump affected facilities?**

* * * * *

(f) Pneumatic pumps at a well site are not subject to the requirements of paragraph (d) and (e) of this section from June 2, 2017, until August 31, 2017.

**§ 60.5397a [Amended]**

■ 3. Section 60.5397a is stayed from June 2, 2017, until August 31, 2017.
■ 4. Section 60.5410a is amended by:
■ a. Staying paragraphs (e)(2) through (5) from June 2, 2017, until August 31, 2017;
■ b. Adding paragraph (e)(8); and
■ c. Staying paragraph (j) from June 2, 2017, until August 31, 2017.

The addition reads as follows:

**§ 60.5410a How do I demonstrate initial compliance with the standards for my well, centrifugal compressor, reciprocating compressor, pneumatic controller, pneumatic pump, storage vessel, collection of fugitive emissions components at a well site, collection of fugitive emissions components at a compressor station, and equipment leaks and sweetening unit affected facilities at onshore natural gas processing plants?**

* * * * *

(e) * * *

(8) Pneumatic pump affected facilities at a well are not subject to the requirements of (e)(6) and (7) of this section from June 2, 2017, until August 31, 2017.

* * * * *

■ 5. Section 60.5411a is amended by:
■ a. Revising the introductory text;
■ b. Staying paragraph (d) from June 2, 2017, until August 31, 2017; and
■ c. Adding paragraph (e).

The revision and addition read as follows:

**§ 60.5411a What additional requirements must I meet to determine initial compliance for my covers and closed vent systems routing emissions from centrifugal compressor wet seal fluid degassing systems, reciprocating compressors, pneumatic pumps and storage vessels?**

You must meet the applicable requirements of this section for each cover and closed vent system used to comply with the emission standards for your centrifugal compressor wet seal degassing systems, reciprocating compressors, pneumatic pumps and storage vessels except as provided in paragraph (e) of this section.

* * * * *

(e) Pneumatic pump affected facilities at a well site are not subject to the requirements of paragraph (a) of this section from June 2, 2017, until August 31, 2017.

■ 6. Section 60.5415a is amended by:
■ a. Revising paragraph (b) introductory text and adding paragraph (b)(4); and
■ b. Staying paragraph (h) from June 2, 2017, until August 31, 2017.

The revision and addition read as follows:

**§ 60.5415a How do I demonstrate continuous compliance with the standards for my well, centrifugal compressor, reciprocating compressor, pneumatic controller, pneumatic pump, storage vessel, collection of fugitive emissions components at a well site, and collection of fugitive emissions components at a compressor station affected facilities, and affected facilities at onshore natural gas processing plants?**

* * * * *

(b) For each centrifugal compressor affected facility and each pneumatic pump affected facility, you must demonstrate continuous compliance according to paragraph (b)(3) of this section except as provided in paragraph (b)(4) of this section. For each centrifugal compressor affected facility, you also must demonstrate continuous compliance according to paragraphs (b)(1) and (2) of this section.

* * * * *

(4) Pneumatic pump affected facilities at a well site are not subject to the requirements of paragraphs (b)(3) of this section from June 2, 2017, until August 31, 2017.

* * * * *

■ 7. Section 60.5416a is amended by revising the introductory text and adding paragraph (d) to read as follows:

**§ 60.5416a What are the initial and continuous cover and closed vent system inspection and monitoring requirements for my centrifugal compressor, reciprocating compressor, pneumatic pump, and storage vessel affected facilities?**

For each closed vent system or cover at your storage vessel, centrifugal compressor, reciprocating compressor and pneumatic pump affected facilities, you must comply with the applicable requirements of paragraphs (a) through (c) of this section, except as provided in paragraph (d) of this section.

* * * * *

(d) Pneumatic pump affected facilities at a well site are not subject to the requirements of paragraphs (a) and (b) of this section from June 2, 2017, until August 31, 2017.

■ 8. Section 60.5420a is amended by:
■ a. Revising paragraph (b) introductory text;
■ b. Staying paragraphs (b)(7), (8), and (12) from June 2, 2017, until August 31, 2017;
■ c. Adding paragraph (b)(13); and
■ d. Staying paragraphs (c)(15) through (17) from June 2, 2017, until August 31, 2017.

The revision and addition read as follows:

**§ 60.5420a What are my notification, reporting, and recordkeeping requirements?**

* * * * *

(b) *Reporting requirements.* You must submit annual reports containing the information specified in paragraphs (b)(1) through (8) and (12) of this section and performance test reports as specified in paragraph (b)(9) or (10) of this section, if applicable, except as provided in paragraph (b)(13) of this section. You must submit annual reports following the procedure specified in paragraph (b)(11) of this section. The initial annual report is due no later than 90 days after the end of the initial compliance period as determined according to § 60.5410a. Subsequent annual reports are due no later than same date each year as the initial annual report. If you own or operate more than one affected facility, you may submit one report for multiple affected facilities provided the report contains all of the information required as specified in paragraphs (b)(1) through (8) of this section, except as provided in paragraph (b)(13) of this section. Annual reports may coincide with title V reports as long as all the required elements of the annual report are included. You may arrange with the Administrator a common schedule on which reports required by this part may be submitted as long as the schedule does not extend the reporting period.

* * * * *

(13) The collection of fugitive emissions components at a well site (as defined in § 60.5430a), the collection of fugitive emissions components at a compressor station (as defined in § 60.5430a), and pneumatic pump affected facilities at a well site (as defined in § 60.5365a(h)(2)) are not subject to the requirements of paragraph (b)(1) of this section from June 2, 2017, until August 31, 2017.

* * * * *

[FR Doc. 2017–11457 Filed 6–2–17; 8:45 am]
BILLING CODE 6560–50–P

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 62

**[EPA–R08–OAR–2017–0171; FRL–9963–21–Region 8]**

## Approval and Promulgation of State Plans for Designated Facilities and Pollutants: Colorado, Montana, North Dakota, South Dakota, Utah, and Wyoming; Negative Declarations

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule.

**SUMMARY:** With this direct final rule, the Environmental Protection Agency (EPA) is taking action to approve the negative declarations for several designated facility classes in various states of Region 8. First, the EPA is taking direct final action in approving the negative declarations for small municipal waste combustor (MWC) units submitted by the states of Colorado, Montana, North Dakota, South Dakota, and Wyoming. Second, the EPA is taking direct final action in approving the negative declarations for large MWC units submitted by the states of Colorado, Montana, North Dakota, South Dakota, Utah, and Wyoming. Third, the EPA is taking direct final action in approving the negative declarations for commercial industrial solid waste incineration (CISWI) units submitted by the states of Montana, South Dakota, Utah, and Wyoming. Fourth, the EPA is taking direct final action in approving the negative declarations for other solid waste incineration (OSWI) units submitted by the states of Montana, North Dakota, South Dakota, Utah, and Wyoming. Each state included in this action has notified the EPA in a letter of negative declaration that there are no existing designated facilities, of the source category specified in each particular letter of negative declaration, subject to the requirements of sections 111(d) and 129 of the Clean Air Act (CAA or the "Act") currently operating within the jurisdictional boundaries of their state. The EPA is accepting the negative declarations in accordance with sections 111(d) and 129(b) of the Act. This is a direct final action without prior notice and comment because the action is deemed noncontroversial.

**DATES:** This direct final rule is effective on August 4, 2017 without further notice, unless the EPA receives adverse written comments on or before July 5, 2017. If adverse comments are received, the EPA will publish a timely withdrawal of the direct final rule in the **Federal Register** informing the public that the rule will not take effect.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–R08–OAR–2017–0171 at *http://www.regulations.gov.* Follow the online instructions for submitting comments. Once submitted, comments cannot be edited or removed from *Regulations.gov.* The EPA may publish any comment received to its public docket. Do not submit electronically any information you consider to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Multimedia submissions (audio, video, etc.) must be accompanied by a written comment. The written comment is considered the official comment and should include discussion of all points you wish to make. The EPA will generally not consider comments or comment contents located outside of the primary submission (*i.e.,* on the web, cloud, or other file sharing system). For additional submission methods, the full EPA public comment policy, information about CBI or multimedia submissions, and general guidance on making effective comments, please visit *http://www2.epa.gov/dockets/commenting-epa-dockets.*

**FOR FURTHER INFORMATION CONTACT:** Gregory Lohrke, Air Program, U.S. Environmental Protection Agency (EPA), Region 8, Mail Code 8P–AR, 1595 Wynkoop Street, Denver, Colorado 80202–1129, (303) 312–6396, *lohrke.gregory@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

### I. Why is EPA using a direct final rule?

The EPA is publishing this rule without prior proposal because the agency views this as a noncontroversial action and anticipates no adverse comments. However, in the Proposed Rules section of today's **Federal Register** publication, the EPA is publishing a separate document that will serve as the proposal to publish the negative declarations should relevant adverse comments be filed. This rule will be effective August 4, 2017 without further notice unless the agency receives relevant adverse comments by July 5, 2017.

If the EPA receives adverse comments, the EPA will publish a timely withdrawal in the **Federal Register** informing the public that this direct final rule will not take effect. The EPA will address all public comments in a subsequent final rule based on the proposed rule. The EPA will not institute a second comment period on this action. Any parties interested in commenting must do so at this time. Please note that if the EPA receives adverse comment on an amendment, paragraph, or section of this rule and if that provision may be severed from the remainder of the rule, the EPA may adopt as final those provisions of the rule that are not the subject of an adverse comment.

### II. Background

The EPA's statutory authority for regulating new and existing solid waste incineration units is outlined in CAA sections 111 and 129. Section 129 of the

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| CLEAN AIR COUNCIL, EARTHWORKS, ENVIRONMENTAL DEFENSE FUND, ENVIRONMENTAL INTEGRITY PROJECT, NATURAL RESOURCES DEFENSE COUNCIL, and SIERRA CLUB, | |
| *Petitioners* | No. ___________ |
| v. | |
| SCOTT PRUITT, Administrator, ENVIRONMENTAL PROTECTION AGENCY, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| *Respondents.* | |

**RULE 26.1 DISCLOSURE STATEMENT OF PETITIONERS**

Pursuant to Fed. R. App. P. 26.1 and D.C. Circuit Rule 26.1, Petitioners Clean Air Council, Earthworks, Environmental Defense Fund, Environmental Integrity Project, Natural Resources Defense Council, and Sierra Club make the following disclosures:

**Clean Air Council**

Non-Governmental Corporate Party to this Action: Clean Air Council ("CAC").

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: CAC is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. CAC is a not-for-profit organization focused on protection of public health and the environment.

**Earthworks**

Non-Governmental Corporate Party to this Action: Earthworks.

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: Earthworks, a corporation organized and existing under the laws of the District of Columbia, is a national nonprofit organization dedicated to protecting communities and the environment from the impacts of oil, gas, and mineral development while seeking sustainable solutions to the problems such development can cause.

**Environmental Defense Fund**

Non-Governmental Corporate Party to this Action: Environmental Defense Fund ("EDF").

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: EDF, a corporation organized and existing under the laws of the State of New York, is a national nonprofit organization that links science, economics, and law to create innovative, equitable, and cost-effective solutions to society's most urgent environmental problems.

**Environmental Integrity Project**

Non-Governmental Corporate Party to this Action: Environmental Integrity Project ("EIP").

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: EIP, a corporation organized and existing under the laws of the District of Columbia, is a national nonprofit organization that advocates for more effective enforcement of environmental laws.

**Natural Resources Defense Council**

Non-Governmental Corporate Party to this Action: Natural Resources Defense Council ("NRDC").

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: NRDC, a corporation organized and existing under the laws of the State of New York, is a national nonprofit organization

dedicated to improving the quality of the human environment and protecting the nation's endangered natural resources.

**Sierra Club**

Non-Governmental Corporate Party to this Action: Sierra Club.

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: Sierra Club, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization dedicated to the protection and enjoyment of the environment.

Clean Air Council

DATED: June 5, 2017

Respectfully submitted,

/s/ *Susannah L. Weaver*

SUSANNAH L. WEAVER
SEAN H. DONAHUE
Donahue & Goldberg, LLP
1111 14th St., NW, Ste. 510A
Washington, DC 20005
Telephone: (202) 569-3818
Facsimile: (202) 289-8009
susannah@donahuegoldberg.com
*Counsel for Petitioner Environmental Defense Fund*

DAVID D. DONIGER
Natural Resources Defense Council
1152 15th Street NW, Ste. 300
Washington, DC 20005
Telephone: (202)-289-6868
ddoniger@nrdc.org
MELEAH GEERTSMA
Natural Resources Defense Council
2 N. Wacker Dr., Ste. 1600
Chicago, IL 60606
Telephone: (312) 651-7904
mgeertsma@nrdc.org
*Counsel for Petitioner Natural Resources Defense Council*

PETER ZALZAL
ALICE HENDERSON
VICKIE PATTON
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
Telephone: (303) 447-7214
pzalzal@edf.org
TOMÁS CARBONELL
Environmental Defense Fund
1875 Connecticut Ave., 6th Floor
Washington, D.C., 20009
Telephone: (202) 572-3610
tcarbonell@edf.org
*Counsel for Petitioner Environmental Defense Fund*

ANN BREWSTER WEEKS
DARIN SCHROEDER
Clean Air Task Force
18 Tremont, Ste. 530
Boston, MA 02108
Telephone: (617) 624-0234
aweeks@catf.us
dschroeder@catf.us
*Counsel for Petitioner Earthworks*

ADAM KRON
Environmental Integrity Project
1000 Vermont Ave. NW, Ste. 1100
Washington, DC 20005
Telephone: (202) 263-4451
akron@environmentalintegrity.org
*Counsel for Petitioner Environmental Integrity Project*

JOANNE MARIE SPALDING
Sierra Club
2101 Webster St., Ste. 1300
Oakland, CA 94612
Telephone: (415) 997-5725
Joanne.Spalding@sierraclub.org
ANDRES RESTREPO
Sierra Club
50 F St., NW, Eighth Floor
Washington, DC 20001
Telephone: (202) 650-6073
Andres.Restrepo@sierraclub.org
*Counsel for Petitioner Sierra Club*

TIM BALLO
Earthjustice
1625 Massachusetts Ave., NW,
Ste. 702
Washington, DC 20036
Telephone: (202) 667-4500
tballo@earthjustice.org
JOEL MINOR
Earthjustice
633 17th St., Ste. 1600
Denver, CO 80202
Telephone: (303) 996-9628
jminor@earthjustice.org
*Counsel for Petitioners Sierra Club and Clean Air Council*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2017, the foregoing Petition for Review and Rule 26.1 Corporate Disclosure Statement of Petitioners Clean Air Council, Earthworks, Environmental Defense Fund, Environmental Integrity Project, Natural Resources Defense Council, and Sierra Club have been served by hand delivery, on each of the following:

The Honorable Edward Scott Pruitt
Administrator
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

The Honorable Jefferson Beauregard Sessions, III
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530

Kevin S. Minoli
Acting General Counsel
Office of General Counsel
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

/s/ *Susannah L. Weaver*